Good morning. May it please the court, I'm James Laughlin and I represent the appellant Ms. Christina Sajor-Reeder. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. All right, what's the clock? I will do that. The issue in this case is whether the California Court of Appeal unreasonably decided that there was sufficient evidence to affirm Ms. Sajor-Reeder's conviction for second degree murder, which arose out of a tragic auto accident. It's undisputed that she has a very severe form of bipolar disorder that's resulted in numerous hospitalizations over the years and requires her to take antipsychotic drugs. The prosecution had to prove at trial that despite this illness, she had the subjective mental state of implied malice. That is, she did an intentional act which she had the actual appreciation that that act would have a high probability in leading to the death of another, and yet she continued to do that act with a wanton disregard for human life and a base antisocial motive. The state court of appeal affirmed the conviction only on a theory that took Ms. Sajor-Reeder's undisputed mental illness into account. Specifically, what it with an understanding that the natural consequences of that would be that she would be suicidal or depressed and then drive in a reckless manner without concern for the safety of others. And that's important... Counsel, but I don't know, I think I know where you're going, but the state court expressly stated there was evidence that Ms. Reeder knew reckless driving created a risk of injuring others. So I guess, I know they mentioned also the failure to take her medication theory, but I guess, you know, why was this unreasonable under Jackson? Well, because, well, two things, Your Honor. First of all, I think that you are correct. They mention the knowledge of reckless driving being dangerous, but immediately connect that to the failure to take medication. So my position is that they never acknowledge a theory that does not take her medical condition into account. And that's critical because this court under 2254D has to review the decision that was actually made by the court. Now, there are three reasons why the finding that she was not taking her medication is invalid. I guess the whole briefing here seems to track the same arguments that were made at the trial. Was she hallucinating? The doctor's testimony that she was hallucinating that caused this accident, therefore, you know, she shouldn't be found guilty. Or did she do it with knowledge and could appreciate what she was doing? Certainly looks like a lot of that evidence was based on her prior conduct and some of the things that she said. The jury had both of those theories and they ended up concluding that she did have knowledge. And so it seems like these same, you know, you're making the same arguments that were made to the jury. I'm just, in light of what we have to view here in terms of whether the state court's determination was unreasonable, why, I'm just trying to figure out, why was the jury precluding the, from believing, precluding from believing the evidence supporting the prosecution's theory? Because it seems like there's enough here to support the prosecution's theory as there is the other theory. Well, Your Honor, there are two different prosecution theories and I've tried to explain in brief why certainly only the failure to take medication one is relevant given what the court's decision actually was, that both of the theories are not supported by the evidence. And with regard to the first theory, I think this is very important, that the theory, the first theory was only that she was suicidal and that's why she was driving recklessly. And I know that the respondent tries to argue otherwise, but what's significant is the same attorney general's office on direct appeal twice said in their brief, which is in the excerpt of record, the prosecution's primary theory was that she was suicidal and therefore driving recklessly without concern for the safety of others. So you can read that one of two ways. Either that is, as I argue, the proper interpretation of what the prosecutor argued in the court, in the trial court, or that the prosecution on appeal abandoned any theory that was not linked to suicide and therefore only presented that theory to the California Court of Appeal, which means that the California Court of Appeal could not have relied on a theory other than that. Now with regard to that theory, even now the government doesn't really argue that there's sufficient evidence for the jury to reasonably conclude that she was actually intending to kill herself at the time of the accident. And that's for good reason, because the undisputed evidence about the accident was that at the time she was flailing her arms around, focused on something in the backseat, not looking where she was going, and she did not break before she... Why does her motivation matter at all? I mean motivation usually doesn't matter when we're trying to determine whether the evidence supports the elements of the offense. Motivation is not an element of the offense. Why does it matter that she was acting in such a bizarre way and acting so recklessly and arguably acting with an awareness of the dangerousness of what she was doing and no regard for the consequences? Why does motivation matter at all in the analysis? Because in this case motivation was at the prosecutor's proxy for implied malice. Again, the evidence shows that she did not break before this accident. There's two ways to interpret that. Either she was distracted by something in the backseat or otherwise under the influence of her mental disease and therefore was not aware she was causing the accident and that's not implied malice. Or under the government suicide theory, she knew what she was doing. She says I'm going to crash into this car to kill myself and my daughter and that's a completely different situation. The government wants that to be the inference because that would arguably be implied malice. She's doing something with a conscious decision. So here the suicidal motive, correct, there's case law saying that in general motive is not something needs to be proved. But in this case the motive was the proof of the subjective intent. She had, the government's theory was she had the intent to commit suicide, therefore she acted with implied malice. And just briefly on the other theory, you know, there are several reasons why the theory that was actually adopted by the California Court of Appeal that she First of all, a reasonable juror couldn't determine that she actually was not taking her medication. The state court of appeal relied on two things. The testimony of the defendant's niece, teenage niece, who admitted that she was speculating and never even knew whether she ever observed her aunt without medication. And speculation can't be the basis of sufficient evidence. Two, there's no, it's difficult to recognize, there's no evidence to show that if she wasn't taking her medication that was an intentional rather than a negligent decision. And finally, the standard for implied malice is quite high. There has to be knowledge of a high probability that the act will result in death. Now given the strained and speculative series of events that's needed to get from a decision to say I'm not taking my medication to a possible fatal car accident days or weeks later, I argue there's not even a high probability under any statute. Suppose the rationale is incorrect but the decision, the ultimate decision is supported by evidence in the record. I believe that this court must, in applying AEDPA, this court can only review the decision actually made by the California Court of Appeal. I think to do otherwise would actually defeat the purposes underlying AEDPA. Because if we give respect to what the state court did and the state court considered, you know, both of the theories offered by the prosecution and in my opinion interpreting that decision said, well we don't really find that there's evidence to support the suicide theory. We're going to focus on this failure to take evidence theory. Then I think it would be theory that was not adopted by the court. And the other factor the court has to keep in mind too is the cases of McCormick and Chiarella, which are cited in the opening brief, which say that no court can affirm on sufficient evidence based on factual or legal theories that were not presented to the district, I'm sorry, to the jury. So that constrains the court's authority as well. I see Good morning, David Glassman for the respondent. Not surprisingly, I'm going to suggest a significantly different way to evaluate the analysis in this case. And I think, and this touches on a point Judge Wardlaw just made, this has to do with ultimately how the standard of doing. As the court knows, the original question for the jury was whether there was malice established. And that was, as a practical matter, the only disputed issue in the trial. And as we know from Jackson versus Virginia, the question isn't what verdict the jury should have reached, it's what verdict the jury could reach on the evidence presented. And evidence presented that someone has driven a car at speeds up to 80 miles an hour into a stationary vehicle, killing one person, virtually destroying the body of another person, under the circumstances that were presented in this case, could lead to a conclusion of malice. Now the argument here goes that somehow, in spite of the fact that that is the Jackson standard, is virtually the most forgiving or abstract standard of review that is possible, that now the whole process is complicated because of the ADPA. And of course the ADPA, ostensibly, is to support the state court judgment, not to complicate it. And the idea becomes that under the ADPA, we are now unconcerned with the jury's verdict, although I'm going to argue to this court that the jury's verdict is the only relevant decision in this case as a practical matter, and we simply focus on the court of appeals methodology. I think that that twists the ADPA, that is, particularly in the specific context of sufficiency of the evidence. The ADPA contemplates, in most contexts, a decision a court makes, admissibility of evidence, conduct of counsel, etc. This is a sufficiency of the evidence case. Is there evidence of malice? And to the idea that, well, the jury is presented with these two theories, and somehow those are the controlling legal concepts in this case, the theories are just that. They are theories of the lawyer, and the jury is told they are theories, and the jury is not told that they are bound by theories, but they are told that if they find malice, they must find it beyond a reasonable doubt. And as to this history of mental illness, which certainly is not disputed in this case, what is true, regardless of the exactitude with which we know whether she previously took medication and when she took it, we know that after she plows into that vehicle, which is three years after she previously drove, was attempting to elude police, ran, several red lights, was stopped, and was advised of the dangerousness of her conduct, we know that in the aftermath of the fatal collision, when she has knocked a car a football field away, and she is questioned by police on the scene, she says, apparently calmly, I had the right of way, I had a green light, I was going 40 miles an hour, I was blindsided. That is completely inconsistent with this portrayal of her as delusional, as psychotic, etc. So ultimately... What evidence established that Ms. Reeder did not take her medication on the day of the accident? Several things. One was the testimony that the refilled prescription was unopened. Second was the testimony of her niece that she behaved in a certain way when medicated, and in a different way when not medicated. Third was her statement, her statement to police that she had not taken medication that day. So there were a variety of sources, and as to whether or not there was conclusive evidence as to whether she was medicated that day, there doesn't have to be, because that's not the standard. The question is, was there evidence from which a juror could infer that she was not taking medication, and even if not, was there other evidence indicative of malice? The sine qua non of malice in this case is not whether or not she was medicated. It is whether her absence, or rather the presence of malice. And I would note in that regard, because it is relevant here, that you had her extraordinarily incriminating, ultimately, post-defense statements. She's lying to the police. That is clear. She testifies at trial. She's lying about the crime. That can't be disputed. The expert that she calls, who is a testifying psychologist, is, I think it's at a minimum, is discredited even by the trial judge for lack of professionalism, and by the magistrate. So the point is that when we talk about all this allegedly mitigating or uncontroverted defense evidence, there are explanations not only for malice, but for why a jury in this case deliberated 90 minutes. You mentioned the theories of this case. The prosecutor apparently had two theories that the state court appears to have commingled, and does that impact our analysis at all? It doesn't for several reasons. First, because I don't think it's fair to say that they are confused in the way that it's been described. If the court looks at the excerpts, well, specifically at the magistrate's report, at page 20 of the report, the court of appeal, the state court of appeal's rationale is set forth there verbatim, and the court of appeal is simply, in my view, listing evidence and arguments that are presented. They are not endorsing one to the exclusion of another. That's number one. And number two, as I indicated previously, again, if we take the ADPA out, just to simplify things, and we look at the Jackson versus Virginia question, the traditional question, is there some evidence that supports the verdict? This is an inquiry into evidence, not theories, not arguments. And this is a case where certainly one could draw the inference of malice that this jury drew. Whether there was other evidence or another interpretation that a different jury could make, we'll never know, because certainly her cause wasn't helped by what I think can fairly be described as her own disastrous testimony and her own unfortunate choice of an expert witness. In a case in which all we're talking about is her state of mind, to argue in this case what was argued at trial, which is in the face of an argument about malice, to say, you know, the defense in this case, incredibly, I think, was not only is there no malice, this isn't a negligent homicide, there's no crime here, under circumstances that are extraordinarily sad and brutal. Well, why is that such an implausible argument? I mean, if the evidence is, if it could be established that she was in such a hallucinatory state, that she had no awareness of reality, why wouldn't that, from the defense point of view, negate the state of mind that is necessary either for malice or even arguably for negligence, if they wanted to argue it wasn't a negligent homicide? It might, Your Honor, in a situation where the evidence supported it. But in particular, the reason that this expert was called out, if you will, by the trial judge, is that for specifically he stated that she was delusional in her background, in her past. And as was established on cross-examination of him and in the questioning of her, she had been questioned 56 times in the past about whether she was experiencing delusions. She never indicated delusions. Delusions were never attributed to her. And if we are to say— Well, wasn't there testimony that she could be in a delusional state and yet not be aware of it? And there's often a tendency for people suffering from this kind of illness to deny their illness, to deny that they're in the grips of a delusion. That's not surprising, is it, that she would deny it? Well, whether it's surprising or not—and, of course, ultimately the question is, if the jury understands the equation, the jury is authorized, has the discretion to make the evaluation. But however we would typically understand delusional behavior, the fact is that in the immediate aftermath of a fatal collision that has sliced a car in half and left her intact and, fortunately, the child intact, she is lying to the police and describing herself as the victim of the incident. And that's far from a delusion as I understand the term. I think my time is up. Did you have a question? I just want to—did you offer any testimony, a medical testimony to counter the doctor or anything like that? No contrary expert was presented at trial. Thank you. Thank you. Mr. Lawson. First, contrary to what counsel suggests, the issue here is not whether there is no crime here. The issue is whether she was properly convicted of second-degree murder and not the alternative vehicular manslaughter charge that was before the jury. Second, the counsel seems to think that the combination of the Jackson standard and the AEDPA standard creates an insurmountable burden for federal habeas attack insufficiency evidence. That's not the case. This case several years ago in Juan H. v. Allen dealt with a similar case, a murder case with a different mental state requirement. The court had a long section about how serious the standard review was and even though the state court had made detailed findings for why the intent was proven, the court went through one by one and explained why those inferences were not reasonable. In fact, one example is very similar to the report made repeatedly by counsel when he cites misdemeanor reader statements after the accident. In that case, the defendant made a false alibi, and the California Court of Appeals said, well, we can infer that means he had a consciousness of guilt. And this court said, there's plenty of reasons you can do that. You can't just infer that that's the one. And then the final point is about this idea that these are just theories that the prosecution made at trial or on appeal, and that's irrelevant. That's simply not true. Again, the respondent never responded to my citations in the opening brief of McCormick and Chiarella, which says that a sufficiency of the evidence can only be based on theories, factual and legal, that are presented to the jury. And then we have here the extra layer of the fact that this court should really only be reviewing the theories that are adopted by the Court of Appeal. Unless the court has further questions, I'll submit. Thank you, counsel. Thank you. Sure, of course. Okay, so Sazer, Reeder v. Cavazos will be submitted, and the court will be in recess for about five minutes before the next case. Thank you, counsel.
judges: Lipez, Wardlaw, Murguia